LINA FISCHER

*v.*

ELLEN TUOHY.

*Opinion filed June 21, 1900.*

1. MORTGAGES—*priority as between mortgages acknowledged and recorded the same day.* As between two mortgages acknowledged the same day and recorded the same day and hour, mortgaging the same premises to secure two notes made payable to the same nominal payee, for convenience in negotiating them, that one is entitled to priority which is first entered and numbered by the recorder for record and which secures the note bearing the earlier date, if such mortgage is the first one transferred for value.

2. SAME—*when notice to loan agent is notice to principal.* Notice to an agent of facts operating to constitute a note and mortgage purchased by him for his principal a second lien is notice to the principal, where the latter is informed that the agent is exercising his own discretion as to the investment and accepts his action without objection, receiving the note and mortgage from him and afterwards receiving four semi-annual installments of interest.

*Fischer* v. *Tuohy*, 87 Ill. App. 574, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

LACKNER, BUTZ & MILLER, and FRANCIS T. COLBY, for appellant.

JOSEPH B. LEAKE, for appellee.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

The decree of the superior court of Cook county foreclosing two certain mortgages executed by Adolph L. Luetgert and wife to secure certain notes executed by said Luetgert, one for $20,000, held and owned by the appellant, the other for $30,000, held by the appellee, was affirmed by the Appellate Court for the First District, and the cause is here by appeal from such judgment of affirmance.

The mortgage given to secure the note held by the appellant mortgaged lots Nos. 1 and 2 in Luetgert's subdivision of lot No. 1 of Fullerton's fourth addition to the city of Chicago, and the mortgage securing the indebtedness held by the appellee mortgaged said lot No. 1 in said subdivided lot. The superior court declared the mortgage held by appellee constituted the prior lien on said lot No. 1. But a single question is presented, viz., which of the mortgages constituted the prior lien on said lot No. 1.

Both mortgages were acknowledged on the same day, November 4, 1892, and were both filed for record on that day and at the same hour. Appellant's mortgage was given to secure the mortgagor's note for $20,000, dated November 3, 1892, and the body of the mortgage bore the same date as that of the note. Appellee's mortgage was given to secure a note for $30,000, dated October 29, 1892, and the mortgage bore the same date as the note. Both mortgages were given to Robert Berger, as trustee, and both notes were made payable to Adolph Nissen. The trustee was "teller" of the firm of E. S. Dreyer & Co., and the payee named in the notes was an employee of that firm. The firm of Dreyer & Co. were engaged in the business of banking and negotiating loans on real estate, and had undertaken to negotiate a loan in the sum of $50,000 for the mortgagor, who was a depositor in their bank. The security offered by the mortgagor was said lots 1

and 2 in said subdivision. The payee in the notes had no interest whatever in the paper. The notes and mortgages, when executed, were placed in the possession of Dreyer & Co., to be sold for the benefit of Luetgert; and Nissen, an employee of Dreyer & Co., was named payee merely for the purpose of convenience in the matter of transferring the paper.

It is clear the mortgagor supposed the entire sum would be secured by one mortgage, until he came to sign the notes and mortgages, and that he had no personal intention or knowledge concerning the priority of liens as between the two mortgages. Two mortgages were executed for the reason Dreyer & Co. expected to obtain $30,000 of the sum desired to be borrowed by the sale of the note for that amount to the appellee, and had arranged, in order to complete the full amount, to apply $20,000 belonging to the appellant, which was in their hands to be invested in real estate securities, to the purchase of the note for that amount. This sum of $20,000 had been previously loaned by the appellant, who resided in Germany, to one Goldie. The interest accruing on the said Goldie mortgage had been collected annually for a number of years by the said Dreyer & Co. and forwarded to appellant. When the Goldie note fell due the appellant sent it, and the mortgage securing it, to said Dreyer & Co. for payment and it was paid to that firm. The appellant instructed them to loan the money so collected from Goldie, on real estate security at interest for her, to be secured by a first mortgage.

The appellee had placed in the hands of Gen. Joseph B. Leake the sum of $30,000 to be invested in first mortgage real estate securities. Dreyer & Co. procured Luetgert to execute the two notes and mortgages. The notes and mortgages were placed in the possession of Dreyer & Co., who delivered the mortgages, together with an abstract of the title to the lots in question and of a number of other lots owned by the mortgagor, to a firm

186—10

who were engaged in the business of making abstracts of titles, and directed said firm of abstracters to have the mortgages filed for record and then to complete the abstract showing the condition of the title after the filing of the mortgages. Gen. Leake and the appellee had inspected the property, and Gen. Leake testified he advised Dreyer & Co. the security was satisfactory and that the appellee's money would be loaned upon it, provided he should be satisfied that the title was good and the money secured by first mortgage. Gen. Leake is an attorney at law. The abstract was completed and delivered by Dreyer & Co. to him, as attorney and agent for the appellee, in order he might determine whether her money should be invested in the purchase of the $30,000 note secured by the mortgage aforesaid. The appellant was then in Germany. Her money was in the hands of Dreyer & Co. Neither the appellee nor her attorney had any knowledge of the intention of Dreyer & Co. to invest the appellant's money in a loan to Luetgert. Dreyer & Co. did not procure the abstract to be examined by an attorney acting on their behalf or in behalf of appellant, but determined that they would act in the matter of investing appellant's money in the $20,000 note on the result of the examination of the title by Gen. Leake. On this point Robert Berger, a member of the firm of Dreyer & Co., testified as follows: "The abstract was delivered to Gen. Leake a day or two before, for his examination and to give us his opinion as to the title of this property. It was to give us his opinion and to find out for himself what the title was before he paid his money. Gen. Leake had applied for the mortgage and accepted the property, and all that might possibly prevent him buying the mortgage was a defect in the abstract. It was understood that he was to have the right to examine the abstract before he accepted the mortgage. We could act on his accepting the loan, knowing that he would not accept it unless the title was good,—so if the title was good for

one party it was good for the other.    In fact, we stood
by his examinatien.    If a defect had been found in the
title it would have canceled the whole deal."

The abstract was delivered to Gen. Leake on the 9th
day of November, 1892.  The abstract disclosed the filing
of both the mortgages for record on the same day, No-
vember 4, 1892, the hour of the filing not being given
in either instance, but it appeared from the abstract the
mortgage securing the $30,000 note held by the appellee
was dated October 29, 1892, and that the document num-
ber thereof on the entry book required by section 12 of
chapter 115 of the Revised Statutes, entitled "Recorders,"
to be kept by the recorder, was 1762804, and that the
mortgage securing the $20,000 note held by the appellant
was dated November 3, 1892, (five days after the date of
appellee's mortgage,) and that it bore the document num-
ber on the recorder's entry book 1762805,—one number
later than that of appellee's mortgage.   The abstract did
not show the two mortgages had been filed by the recorder
as received at the same hour, but did show the recorder
had entered the mortgage given to secure the $30,000
note on the book or docket kept by the recorder for the
purpose of showing the order in which instruments to be
recorded came to his hands, as having been received by
him for record before the mortgage securing the $20,000
came to the hands of that official for record.    It there-
fore appeared from the face of the abstract the mort-
gage securing the $30,000 note came to the hands of the
recorder for record before the mortgage to secure the
$20,000 note reached that official.

On October 30, 1892, Gen. Leake reported to said
Dreyer & Co. that he was satisfied to take the $30,000 note
for appellee, and, acting for the appellee, paid Dreyer &
Co. the amount to be paid for the $30,000 note, and Dreyer
& Co. delivered that note, and the mortgage securing it,
to him.  They received and held this money as the agents
of and for Luetgert.   At this time the $20,000 note, (now

held by the appellant,) and the mortgage securing it, were in the possession of Dreyer & Co. They held such note and mortgage as the agent of Luetgert, to be sold for his benefit. They then had in their possession the money ($20,000) of the appellant. On the 15th day of November, 1892, Dreyer & Co. credited the account of the mortgagor, Luetgert, as a depositor in their bank, with the sum of $54,507, being the amount, in the aggregate, of the money of appellee paid by Gen. Leake, of appellant's money in their hands, and the proceeds of certain other loans at that time negotiated by Dreyer & Co. for said Luetgert.

It therefore appeared, beyond controversy, that after receiving the $30,000 of the appellee's money from Gen. Leake, Dreyer & Co., acting for the appellant, determined to invest her money in the purchase of the $20,000 note. When Gen. Leake, acting for the appellee, paid to Dreyer & Co. the money of appellee and received the $30,000 note, a lien at once attached on the property described in the mortgage in favor of the appellee. Dreyer & Co. then held the $20,000 note, now owned by appellant, as the agent of Luetgert, to be sold by them for his benefit. They held also the mortgage drawn to secure the payment of such note, but the note was in the hands of Dreyer & Co. as agents of Luetgert, the maker, to be sold for the benefit of the maker. It had not been sold, and as between Luetgert, the maker, and Nissen, the payee, and appellee, no lien had attached, for the reason there was no indebtedness to Nissen to be secured by the mortgage. A debt or mortgage obligation of some character is an essential element in a transaction to create the relation of mortgagor and mortgagee. (*Freer* v. *Lake*, 115 Ill. 662.) The payment of appellee's money to Dreyer & Co. for Luetgert created the relation of mortgagor and mortgagee between appellee and Luetgert, and the lien of the mortgage securing the note purchased by appellee at once attached to lot 1. No lien then existed in favor of Nissen, as to the $20,000 note, which he could have

enforced against appellee. As between appellee and Nissen the lien in favor of appellee was paramount.

It is insisted by counsel for appellant that Dreyer & Co. had, before the acknowledgment of these mortgages but in anticipation of the application of the appellant's money to the purchase of the Luetgert note for $20,000, authorized Luetgert to draw on the $20,000 of appellant's money which was then in their possession. This, it is urged, amounted to a transfer and appropriation of the funds of appellant to Luetgert, and that therefore there existed an indebtedness to support the mortgage covering the $20,000 on the day the mortgage was executed and that the lien of that mortgage then attached. The substance of the testimony on this point is, that Dreyer & Co., knowing that Gen. Leake and appellee had examined the Luetgert property and were satisfied to buy the $30,000 note if the title to the property proved satisfactory, and having themselves control of the $20,000 belonging to appellant, felt such assurance that the money would be procured on the notes that they were willing Luetgert, who was a depositor in their bank, should, if he needed some funds, overdraw his account with their bank, and so informed him. But it is clear from the testimony of Berger, a member of the firm of Dreyer & Co., that the appropriation of any part of appellant's money to the purchase of the $20,000 Luetgert note was not determined upon, and was not to be so determined, until after Gen. Leake had decided that the $30,000 note was a satisfactory investment for the appellee. Berger's testimony, hereinbefore quoted, is to the effect that Dreyer & Co., in the matter of investing the appellant's money, had determined to be governed by the course pursued by Gen. Leake. If he accepted the $30,000 note for appellee they would accept the $20,000 note for appellant, but if he did not take the $30,000 note they would not take the $20,000 note for the appellant. Berger expressly says, if Gen. Leake had found a defect in the title "it would

have canceled the whole deal." As before said, when Gen. Leake paid for and received the $30,000 note, a lien at once attached on lot 1 to secure the payment of that note. There was then no other lien on that lot. Dreyer & Co., acting for the appellant, afterwards purchased the $20,000 note for the appellant. Before making such pur--chase of the $20,000 note, Dreyer & Co. had placed before Gen. Leake, for his guidance in the matter of investing the money of the appellee, an abstract of title purporting to show the true state of the record of the title to the property, but which did not show that the two mortgages in question were filed at the same hour, but that the one securing the $30,000 note was entered for record prior to the mortgage given to secure the $20,000 note, and they knew they had received the $30,000 of appellee's money on the faith of the title as disclosed by the abstract.

If the appellant, háving such knowledge as Dreyer & Co. had, had paid her money for the $20,000 note at the time and under the circumstances that Dreyer & Co. acted. in investing her money in that note, it is very clear she could not have contended the lien of her mortgage was superior to that of the appellee. If Dreyer & Co. were the agents of the appellant, then the familiar rule is applicable that notice to Dreyer & Co. touching the subject matter of the agency, or in regard to the transaction in which Dreyer & Co. were engaged as agents, is notice to the appellant. (*Page* v. *Brant*, 18 Ill. 37; *Singer Manf. Co.* v. *Holdfodt*, 86 id. 455; *Whitney* v. *Burr*, 115 id. 289; *Miller* v. *Whelan*, 158 id. 544.) We think it was well established that Dreyer & Co. were the agents of the appellant. The mortgage executed by Goldie on September 16, 1889, held by the appellant, appeared on the books kept by Dreyer & Co. as a record of the mortgages made and sold by them. They had collected the annual interest thereon and remitted the same to the appellant. The principal of the Goldie debt having fallen due, appellant sent the note and mortgage by mail to Dreyer & Co. to be collected by

them. She produced in evidence a letter dated September 30, 1892, received in reply from Dreyer, acting for the firm, from which we quote as follows:

"Your letter and the mortgage of Goldie for $20,000 I have received, and will send you with the next mail $1300 interest, as I did not like to send this letter and the money in one and the same steamer. Goldie, who owes the money, would like to have the mortgage extended for a few months,—probably to December 1,—and as he pays six and one-half per cent interest,—which is one-half more than is usually paid on large mortgages,—and as you intend to have the money loaned out again in interest bearing security, we have consented to such extension, as requested by Mr. Goldie; and as it is more or less a risk to send such valuable papers to Europe for a few months, considering the danger of steamers, we send you herewith a receipt for the mortgage, and as soon as the same is paid I shall re-invest the money again and shall send you the new mortgages, and again assure you that you need not lose any sleep over the new investment which I intend to make, as long as I live; and as I have always invested your money carefully I shall endeavor to do so in the future, as I well know you are depending on the interest of the money for a living. * * * P. S.—I have the will of Mr. Fischer, which you formerly sent me, carefully filed away, and as you do not as yet need the will I shall send it to you with the next papers, the $20,000 mortgage."

Appellant produced another letter written by Dreyer under date of December 2, 1892, from which we quote as follows:

"We have received your letter of October 24, in which you inform us that you have received the interest on the Goldie mortgage, and we herewith send you our draft on the German Bank at Berlin for M666.66 mark, being the amount of interest accrued on the Goldie mortgage from September 10 until November 3, on which day the en-

closed mortgage of Luetgert commences to run. We also enclose herein a new mortgage for $20,000 from A. L. Luetgert, and although the interest is almost exclusively only six per cent, we show you most distinctly that we take care of your interest when you see that we succeeded in investing your money for two years at six and one-half per cent. We would have gladly given the money at this high rate of interest for more years, but the borrower did not want it any longer. Luetgert is an old and rich customer of ours, and the security which we have for the $20,000 is better yet than the old'one. You can therefore now sleep quietly and send us the interest notes in the future promptly as they become payable. We would have gladly fulfilled your wish and had made two mortgages for $10,000 each, but we had already made the enclosed mortgage for $20,000 when we received your letter of October 24, and in order that you should not lose one day's interest we held the enclosed mortgage ready for you, to be sent to you as soon as Goldie had paid, which he did yesterday, and as I have no two mortgages for $5000 each which bear interest at six and one-half per cent, I herewith send you the $20,000 one, and you will certainly be satisfied with it. I also send you herewith last will of Mr. Fischer, so that you have all your papers together, and it would please me if you would write to me at once after receipt of this letter, whether you have properly received all papers."

Dreyer & Co. extended the time of the payment of the Goldie debt, fixed the rate of interest to be received by appellant from Leutgert, and fixed the time that loan was to run, and exercised their judgment and discretion with reference to the security to be taken. The letter under date of September 30, received by the appellant from Dreyer & Co. fairly advised her Dreyer & Co. assumed to be authorized to exercise so their judgment and discretion in matters pertaining to the investment of her money, and that they were proceeding and intended to

proceed and act in that matter as her agents. They did so act, and without objection upon her part. She accepted the result of their action, received from them the Luetgert note for $20,000 and the mortgage securing it, and afterwards received four semi-annual payments of interest thereon. The authority possessed by Dreyer & Co. to represent and act for her was ample to charge her with notice of facts coming to their knowledge while so acting for her and before they had finally concluded the purchase of the Luetgert note for her.

The decree of the superior court and the judgment of the Appellate Court are each affirmed.

*Judgment affirmed.*