# Paul Schaeppi v. John H. Glade et al.

1. RECORD—*Of Instruments Filed Simultaneously—Priority.*—Where three trust deeds are filed for record at exactly the same time, no one of them can claim priority over either of the others by reason of a prior filing for record, but there may be facts and circumstances which will entitle one of them to an equitable priority over the others.

2. PRESUMPTIONS—*As to the Delivery of Deeds.*—The presumption is, in the absence of evidence to the contrary, that a deed was delivered on the day of its date, even though it appears to have been acknowledged after that date.

3. SOLICITORS' FEES—*In Favor of Cross-Complainants.*—Where a cross-bill is unnecessary, solicitors' fees can not be decreed in favor of the cross-complainant.

**Bill of Foreclosure.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed June 20, 1901.

**Statement.**—This is an appeal from a decree foreclosing certain trust deeds. The appellant filed a bill for the foreclosure of a mortgage on certain premises hereinafter described, making John H. Glade, Philip Bartholomae, Pauline E. Bode, Edward J. Bode, Charles Henry Seymour, Mary A. Seymour, Edward S. Dreyer, and others, defendants thereto. Answers were filed by Glade, Bartholomae and others, and Glade and Bartholomae filed each a cross-bill, setting up trust deeds of the same premises described in appellant's bill, and praying foreclosure. Answers to the original bill and to the cross-bill, and replications to the answers were filed, and the cause was referred to a master to take proofs and report, and a hearing having been had on exceptions to the master's report, the court rendered a decree, from which this appeal is.

The contest here is between Paul Schaeppi, the appellant, and Glade and Bartholomae, appellees, and is mainly directed to the question of the priority of the trust deeds foreclosed. The facts are substantially as follows: Early in the year 1894, Mr. Bode and Mr. Seymour having arranged to erect

Schaeppi v. Glade.

a double building on lots 4 and 5 in the resubdivision of lots 1 to 5, both inclusive, in block 3 of Thompson's subdivision, in the city of Chicago, Mr. Bode went to E. S. Dreyer, of the firm of E. S. Dreyer & Co., his bankers, and asked him how much money he could lend him to erect the building, saying that he wanted $18,000, but wanted it on three mortgages, one on one of the buildings for $8,000, another on the other building for $8,000, and another on the two buildings for $2,000, and that he told Dreyer the $2,000 was to be left in bank to pay interest, in case it should be needed for that purpose; that the two mortgages for $8,000 were to run for five years and the $2,000 one for two or three years, if it should be needed, and that he, Bode, thought it would be needed. He stated to Dreyer, as a reason for wanting to secure the loan by three mortgages, that it might be nearly a year, or longer, before the building could be completed, and that the money would not be all drawn out at once, but as the building would progress. Dreyer agreed to make the loan, and thereupon the Bodes and Seymours executed to the order of Adolf Nissen two promissory notes, of date March 8, 1894, each for the sum of $8,000, due five years after date, with interest at the rate of six per cent per annum, payable semi-annually, and one promissory note, of date March 9, 1894, for the sum of $2,000, to the order of Adolf Nissen, for the sum of $2,000, due three years after date, with interest at the rate of six and a half per cent per annum, payable semi-annually. On this last note is an indorsement extending the time of payment to March 9, 1898. Adolf Nissen was an employe of Dreyer & Co., and the notes were made to him merely for convenience.

The makers of the notes mentioned also executed interest notes of same dates as the notes, payable to the order of the same person, for the semi-annual interest. To secure payment of one of the notes for $8,000, the Bodes and Seymours executed to E. S. Dreyer a trust deed of date March 8, 1894, of lot 4 in block 3 in Thompson's subdivision, etc., and to secure the other $8,000 note a trust deed of lot 5 in block 3, Thompson's subdivision, and to secure the $2,000

note a trust deed of lots 4 and 5 in said block 3. There is no evidence, except the dates, to show when the notes and trust deeds were delivered to Dreyer & Co. The money loaned by Dreyer & Co. was left in the bank of that firm, credited to Bode and Seymour, and subject to the order of Edward J. Bode, and was drawn out by checks by the latter, the first check of date June 1, 1894, for $8,000, and the last of date September 21, 1894, for $2,039, with the exception of certain debits against the account for insurance paid by Dreyer & Co., and a charge for commissions, which debits and checks together amounted to $18,000.

Bode testified that Dreyer & Co. were the only parties who advanced money for the buildings, and that the money was in their bank subject to his order. The three trust deeds were acknowledged March 9, 1894, and were left with E. S. Dreyer & Co., and as appears by the indorsements thereon by the recorder, were all filed for record March 10, 1894, at ten o'clock A. M. The document number on the $2,000 trust deed is 2,006,732, on one of the $8,000 trust deeds 2,006,733, and on the other $8,000 trust deed 2,006,734. After the trust deeds were recorded Mr. Bode ascertained that there was a mistake in the description of the property, which description in all three of the trust deeds was the same. The intention, as is conceded by all the parties, was to execute trust deeds of lots 4 and 5 in the subdivision of lots 1 to 5 inclusive, in block 3, of Thompson's subdivision, etc., but by mistake lots 4 and 5 are described in the trust deeds as being in block 3 of Thompson's subdivision, instead of in the subdivision of lots 1 to 5 in block 3 of Thompson's subdivision. This mistake was made by taking the description from an abstract, which did not show the subdivision of lots 1 to 5 in block 3, etc., and which had been made a short time before the execution of the trust deeds. Block 3 in Thompson's subdivision is situated at the southwest corner of Washtenaw avenue and North avenue, the former a north and south and the latter an east and west street, and by that subdivision the lots in block 3 fronted east on Washtenaw avenue. But by the subdivision of lots 1 to 5 in block 3 of Thomp-

·son's subdivision, the lots were made to front north on North avenue, so that the mistake was serious and substantial. When Bode discovered the mistake he informed Dreyer of it, and by the latter's suggestion new trust deeds were made out of the same date as the first, and the same in all respects, except that in the new trust deeds the lots were correctly described, and were executed and acknowledged by the grantors who executed the first set of deeds. The last trust deeds, as appears by the indorsement of the recorder thereon, were each and all filed for record in the recorder's office March 29, 1894, at two o'clock P. M.

The second $2,000 trust deed is numbered 2,016,109, one of the second $8,000 trust deeds 2,016,108, and the other 2,016,107. Edward S. Dreyer, the trustee in both sets of deeds, executed a release of the first three trust deeds, dated March 16, 1894, acknowledged July 23, 1894, and filed for record September 4, 1894, at four o'clock P. M. March 10, 1894, Glade purchased from E. S. Dreyer & Co., the note for $8,000, secured by trust deed of lots 4, and April 4, 1894, Bartholomae purchased from said firm the note for $8,000 secured by trust deed of lot 5, and appellant, at same date, purchased from said firm the note for $2,000 secured by trust deed of lots 4 and 5. To each of the purchasers the first trust deed, recorded March 10, 1894, securing the note he purchased, was delivered. Glade's purchase was prior to the execution of the second set of trust deeds, and neither Bartholomae nor Schaeppi knew anything of the execution of the second set of trust deeds, when they purchased, nor of the release of the first set, nor did Schaeppi learn of the same until after the failure of E. S. Dreyer & Co., which occurred in December, 1896. Other evidence relied on by counsel will be referred to in the opinion. The court decreed that Glade and Bartholomae had prior liens, the former on lot 4 and the latter on lot 5.

FRED H. ATWOOD and FRANK B. PEASE, attorneys for appellant.

EDWARD C. NICHOLS, attorney for appellee John H. Glade.

William W. Case, attorney for appellee Philip Bartholomae.

Mr. Presiding Justice Adams delivered the opinion of the court.

Appellant's counsel rely for a prior lien on lots 4 and 5 on the document number of appellant's first trust deed, and on the proposition that Dreyer & Co. acted merely as the agent of the grantors in the trust deeds. The trust deeds owned by appellant, Glade and Bartholomae were all filed for record March 10, 1894, at ten o'clock A. M., and appellant's trust deed was numbered 2,006,732, Glade's 2,006,733 and Bartholomae's 2,006,734.

Section 30 of the act in regard to conveyances provides in substance that deeds, mortgages, etc., "authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record." Section 11 of the act in relation to recorders is as follows :

"Sec. 11. When any instrument in writing is recorded in the recorder's office, the recorder shall indorse upon such instrument a certificate of the time (including the hour of the day) when the same was filed for record (which shall be considered the time of recording the same), and the book and page in which the same is recorded, which certificate shall be signed by the recorder, and shall be evidence of the facts therein stated."

Section 12 of the same act provides :

"Every recorder shall keep the following books: First: An entry book, in which he shall, immediately on the receipt of any instrument to be recorded, enter, in the order of its reception, the names of the parties thereto, its date, the day of the month, hour and year of filing the same, and a brief description of the premises, indorsing upon such instrument a number corresponding with the number of such entry."

" Then follow clauses in section 12 providing for a grantor's index, a grantee's index, an index to each book of

records, and, when required by the county board, an abstract book.   Section 11, quoted *supra*, provides that the time of filing an instrument, indorsed upon the instrument by the recorder, " shall be considered the time of recording the same."   The three trust deeds in question, having been filed at exactly the same time, no one of them can claim priority over either of the others by reason of a prior filing for record.   Noakes v. Martin, 15 Ill. 118;  Deininger v. Mc-Connel, 41 Ib. 227; Stafford v. Van Renssalaer, 9 Cowen, 315. But " there may be facts and circumstances which will entitle one of two mortgages, recorded at the same time, to an equitable priority over the other.   Jones on Mortgages, 2d Ed., Sec. 607, citing Stafford v. Van Renssaelar, *supra*.

Appellant's counsel   contends that the lowest number having been indorsed by the recorder on his trust deed, is a fact which entitles him to equitable priority.   This we can not concede, being of opinion that section 12 of the recorder's act, requiring the recorder to indorse on the instrument received for record a number corresponding with the number of the entry in the entry book, is merely for convenience of reference, just as evidently are the provisions in the same section requiring grantors' and grantees' indexes and a record index to be kept.

Three deeds are presented for record at precisely the same instant of time; so far, clearly, no one has precedence over either of the others.   The recorder takes them all up at the same time.   He must comply with section 12 of the recorder's act by entering them in the entry book and numbering them.   He can not give the same number to all three. He must therefore give them three consecutive numbers, which he does, and indorses these numbers on the deeds, respectively.   Being disinterested, he makes no discrimination between them, so that it is a mere matter of chance on which of the three deeds he indorses the lowest number. Under such circumstances, how can it be seriously urged that the haphazard action of the recorder can determine the relative rights of the parties, or that any one of them has, by such action, acquired any equitable right to priority over the others?

In Brockfield v. Goodrich, 32 Ill. 363, relied on by appellant, a mortgage was made to secure payment of seven $1,000 bonds, and another, of the same premises, to secure payment of fourteen $500 bonds, and the question was, which was entitled to priority. The mortgages were handed to the recorder for record on the same day. It appeared from the evidence that the mortgage securing the $1,000 bonds was first handed to the recorder, and subsequently the other one, and a clerk in the recorder's office testified that he was the receiving clerk at the time, and that it was his custom when two deeds were handed to him successively, to record first the deed first handed to him, and it appears from the opinion of the court that the trust deed securing the $1,000 bonds was actually recorded first. The decision is not applicable to the facts in the present case.

Appellant's counsel also cite Fischer v. Tuohy, 186 Ill. 143.

In that case one Luetgert, desiring to borrow $50,000, executed two notes, one for $30,000, dated October 29, 1892, secured by mortgage of the same date, of certain real property; the other of date November 3, 1892, secured by mortgage of same date of the same property. The notes were payable to Nissen, an employe of Dreyer & Co. The notes and mortgages were delivered to Dreyer & Co., who were employed as agents of Luetgert, to procure the loan, and were recorded November 4, 1892, at the same hour. October 30, 1892, Tuohy, the appellee, purchased from Dreyer & Co. the $30,000 note, paying that amount for it, Dreyer & Co. still having in their possession the $20,000 note. Subsequently Dreyer & Co. purchased for the appellant, Fischer, whose money they held for investment, as his agents, the $20,000 note. *Held*, that Tuohy, the first purchaser, had a prior lien, the court saying :

" When Gen. Leake, acting for the appellee, paid to Dreyer & Co. the money of appellee and received the $30,000 note, a lien at once attached on the property described in the mortgage in favor of the appellee. Dreyer & Co. then held the $20,000 note, now owned by appellant as the agent of Luetgert, to be sold by them for his benefit. They held also the mortgage drawn to secure the payment

of such note, but the note was in the hands of Dreyer & Co. as agents of Luetgert, the maker, to be sold for the benefit of the maker. It had not been sold, and as between Luetgert, the maker, and Nissen, the payee, and appellee, no lien had attached, for the reason there was no indebtedness to Nissen to be secured by the mortgage. A debt or mortgage obligation of some character is an essential element in a transaction to create the relation of mortgagor and mortgagee. (Freer v. Lake, 115 Ill. 662.) The payment of appellee's money to Dreyer & Co. for Luetgert created the relation of mortgagor and mortgagee between appellee and Luetgert, and the lien of the mortgage securing the note purchased by appellee at once attached to lot one. No lien then existed in favor of Nissen, as to the $20,000 note, which he could have enforced against appellee. As between appellee and Nissen the lien in favor of appellee was paramount." 186 Ill. 143, 148.

In the present case Dreyer & Co. did not act as agents in securing the loan, as in the case cited, but made the loan themselves, as principals.

In Maldener, Exr., etc., v. Ruesch et al., 91 Ill. App. 391, unreported, the court relied on both the lower document number, and the earlier date of the note and mortgage, as giving priority. No case has been cited, nor are we aware of any, in which it was held that a deed or mortgage was entitled to priority by reason of the single circumstance of the indorsement on it by the recorder of a lower number. We must, therefore, look for some other circumstance determinative of the question of priority. The $8,000 note and mortgages are dated March 8, 1894, and the $2,000 note and mortgage March 9, 1894. The presumption is, in the absence of evidence to the contrary, that a deed was delivered on the day of its date, even though it appears to have been acknowledged after that day. Deininger v. McConnel, 41 Ill. 227, 231; L. E. & W. R. R. Co. v. Whitham, 155 Ib. 514, 521.

There is no evidence sufficient to rebut that presumption in the present case. Edward J. Bode, one of the grantors, testified that he signed the three trust deeds at the same time, but it does not appear when the other three grantors signed. It is stated in the abstract, doubtless by inadvert-

ence, that Langworthy, a notary public, testified that the first three trust deeds were executed at the same time, but the record shows that he was examined and answered as follows:

Q. "Were you present when the first series of deeds were executed and acknowledged? A. No, sir; I was not."

The last three trust deeds were acknowledged before Langworthy, but the first three were not, and it is evident from his testimony that the trust deeds which he says were executed at the same time are the last three which were acknowledged before him. There is no evidence beyond the dates of the notes and mortgages, to show the order of their delivery to Dreyer & Co. The master and court both found that the first three trust deeds were delivered on the days of their dates, respectively. And among the objections to the master's report, which were ordered to stand as exceptions, there is no objection to this finding. Edward J. Bode, who negotiated the loan, testified that the money was left with Dreyer & Co. subject to his order. Therefore, the $8,000 notes and mortgages having been delivered March 8, 1894, the grantors then had a credit of $16,000 in the bank of Dreyer & Co., and Dreyer & Co. had then a lien on the mortgaged premises for that amount. The lien of Dreyer & Co., by virtue of the $2,000 mortgage, did not attach till the delivery of that mortgage, March 9, 1894. Fischer v. Tuohy, *supra*.

The purchasers of the notes and mortgages from Dreyer & Co. acquired, respectively, the liens which Dreyer & Co. had, in their order of priority. Appellant Schaeppi testified that he asked Mr. Berger, a partner in the firm of Dreyer & Co., for a first mortgage for $2,000, and that Berger handed him the $2,000 mortgage in question, saying it was a first mortgage. This certainly, if true, could not affect the rights of Glade and Bartholomae. In Brookfield v. Goodrich, 32 Ill. 363, a similar claim was made by the complainants, of which the court say: "If they took the assurances of the seller, that these bonds were secured

by a first lien, that was their own folly." Ib. 368. As between all the parties, the equities are to be determined with reference to the first set of trust deeds. If a bill or bills had been filed alleging the mistake in the description of the premises in the first trust deeds, and praying a reformation in accordance with the intention of the parties, and for foreclosure of the deeds as reformed, all parties conceding the mistake, a decree would have been made accordingly. Instead of pursuing that course, new deeds were made, of the same date, properly describing the premises intended to be conveyed, for the purpose of correcting the mistake, and both sets of deeds were set up by the pleadings, and the decree is the same, in effect, as to priority, as it would have been had the former course been pursued. It is noticeable that in the second set of trust deeds appellant's $2,000 trust deed has the highest number, illustrating what has been said, that when two or more deeds are presented for record at the same time, it is mere chance as to which will have the lowest number.

The evidence is that Glade purchased his note and trust deed March 10, 1894, and appellant and Bartholomae their notes and trust deeds April 4, 1894. When appellant purchased, both the first and second sets of trust deeds were on record, and appellant might have learned from the record that the $8,000 trust deeds had the earlier date, and were, presumably, first delivered; and we are of opinion that he is chargeable with constructive notice of what was apparent of record when he purchased. Brookfield v. Goodrich, 32 Ill. 363; Van Aken v. Gleason, 34 Mich. 477.

The court, by the decree, allowed to Glade $600, and to Bartholomae $500, as solicitors' fees, and counsel for appellant object that these allowances should not have been made, for the reason that the cross-complainants could have had all the relief to which they are entitled on their answers, citing Soles v. Sheppard, 99 Ill. 616, in which case the bill was filed by a senior mortgagee, and a junior mortgagee, made a party defendant, filed a cross-bill. The court held that, the cross-bill being unnecessary, solicitors' fees

were erroneously decreed in favor of the cross-complainant. In the present case the cross-complainants had each a prior trust deed, and we are of opinion that appellant, who held a junior trust deed, could not, by filing a bill and making the holders of the prior trust deeds parties, deprive them of their rights, under their trust deeds, to be indemnified against the expenses of foreclosure. Shaffner v. Appleman, 170 Ill. 281; Town v. Alexander, 185 Ib. 254.

The decree will be affirmed.