### John B. Mason, John A. Schmidt and Henry P. Kransz, Trustee, v. Nikolaus Uedelhofen and Katharina Uedelhofen.

1. TENDER—*Effect of, in Foreclosure Proceedings.*—A tender by the defendant in the progress of proceedings in foreclosure is a confession that the complainants have a good cause of action to the amount tendered, and that it is correctly set forth in the bill, that he has broken the contract in the manner and to the extent declared; and, after such tender, it is error in the chancellor to find that the evidence does not sustain the allegations of the bill and to dismiss it for want of equity.

Foreclosure.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the October term, 1901. Reversed and remanded with directions. Opinion filed May 5, 1902.

IVES, MASON & WYMAN, solicitors for appellants.

JAMES J. BARBOUR, solicitor for appellees.

MR. JUSTICE BALL delivered the opinion of the court.

October 14, 1895, Nikolaus Uedelhofen made his promissory note, payable to his own order, for $1,000, due in three

years from date, with interest at seven per cent, payable half yearly; and he and his wife secured its payment by a deed of trust of the premises in question, the homestead of the grantors, to the complainant Kransz as trustee.

The deed contained the usual provisions as to insurance by the grantors, and the ripening of the whole indebtedness at the election of the owner and holder thereof upon default. It also provided for the payment of a solicitor's fee of $150 in case of foreclosure.

This note and deed were delivered to Weber & Co., of which firm said Kransz was a member, and the money loaned thereon was paid to Uedelhofen by or through that firm.

October 14, 1898, the payment of the indebtedness was extended for three years at six per cent, payable half yearly.

At the date of the loan the premises were insured by two policies aggregating $1,050. In February, 1899, one of these policies, for the sum of $850, expired. Thereupon the trustee took out and paid for a policy of like amount, and twice called upon the defendants to pay this premium. This they neglected and refused to do.

· Early in January, 1900, complainant Schmidt went to the trustee and, as owner and holder of the indebtedness, declared the whole sum due and directed a foreclosure for default in the repayment of such insurance premium. The bill to foreclose was filed January 25, 1900, in the names of Kransz as trustee and of Mason as owner and holder of the note. It set forth that the indebtedness was originally due to Mason; that interest was due from October 14, 1899; that said premium was still unpaid, and that Mason had elected to and did declare the indebtedness due; that Mason had paid $15 for the continuation of abstract of title to said premises, and that there was also due to him the sum of $150 for solicitor's fees, as provided in the deed of trust.

The answer of the defendants admitted the execution of the note, but denied that it was indorsed and delivered to Mason; denied the default, or that Mason had elected to declare the principal sum due, or that the same was due.

Other matters are set up, but, by reason of a want of evidence, they need not be here stated.

January 14, 1901, the bill was amended by making said Schmidt an additional party complainant.

The cause was heard in open court in the February term, 1901. At the hearing it appeared that the only indorsement on the principal note was: "Pay to the order of John B. Mason." (Signed) "Nikolaus Uedelhofen."

February 5, 1901, a decree was entered in favor of complainants finding (among other things) that at the time the bill was filed Mason was the owner and holder of the indebtedness; that defendants had made default in regard to the insurance, which constituted a breach of one of the conditions of the deed; that on January 25, 1900, Mason had declared the whole indebtedness due; that there is due to Mason upon the principal note, with interest, $1,077.66, for moneys paid for insurance $12.98, and the further sum of $3.50 paid for abstract; that out of the proceeds of the sale Mason should be paid $150 as and for solicitor's fees; and that "the total sum now due complainant Mason is $1,244.14." It also directs a sale, etc. The defendants thereupon prayed an appeal, which was granted. On the 23d of the same month the following motion of defendants was entered and continued :

"And now come the defendants and move the court to amend the decree in this cause by striking therefrom the allowance of a solicitor's fee of $150 to complainants, and also by striking therefrom the allowance to complainants of their costs in this behalf expended, and also that said decree be in other respects amended so that it will conform to the evidence in the cause."

March 7, 1901 (of the March term), a decree was entered reciting the above motion, stating that the defendants, upon the hearing of said motion, had tendered complainants the sum of $1,112.15 " to satisfy the amount unpaid on the notes of the defendants described in the bill, together with insurance premiums and abstract fees," and the complainants having refused to accept the same " as a complete satisfaction of the amount alleged to be due," the court finds

that the evidence does not sustain the allegations of the amended bill " and is not sufficient to sustain the decree entered at the February term.    Therefore ordered, adjudged and decreed that the decree heretofore entered herein be set aside and held for naught, and that the bill and amended bill of complaint be dismissed at complainants' costs for want of equity."    From this decree the present appeal was prayed and perfected.

It is a grave question whether or not the motion made by the defendants at the February term gave the court the power to change the decree at the next term except in the particulars specifically mentioned in the motion.    But we need not decide that point, because the tender made by the defendants in the March term conclusively admits every fact which the complainants would be required to prove in order to entitle them to recover that money.    1 Greenl. Ev., Sec. 205 (13th Ed.).

After such tender the chancellor should not have found that the evidence did not sustain the allegations of the amended bill, because the defendants had confessed in open court that complainants had a good cause of action to the amount thus tendered, that they had correctly set it forth, and that the defendants had broken that contract in the manner and to the extent declared.    For the same reasons he should not have dismissed the bill as amended "for want of equity."

It will be observed that the tender includes nothing for solicitor's fees.    The offer is limited to the principal indebtedness and the moneys paid out for insurance and upon the abstract.    But the trust deed provided for the payment of solicitor's fees.    Such a provision, when reasonable as to amount, is legal.    Before the tender was made some solicitor's fees had been earned.    The bill had been filed, the issues stated, the cause tried, and the decree drawn and presented, and its approval obtained.    For these services and for the necessary services to follow in making the sale, the parties had covenanted and agreed that $150 should be paid the complainants.    If this sum was unreasonable and

inequitable, the burden of showing it was upon the defendants. They made no such proof. It follows that the court should have found that the sum of $150 was a reasonable fee for such services. Brand v. Kleinecke, 77 Ill. App. 269, and cases cited.

The decree of March 7, 1901, is therefore reversed and the cause remanded, with directions to the chancellor to enter a decree in favor of complainant as of the date of February 5, 1901, for the amounts then found due by him.

Reversed and remanded, with directions.