White v. Lifrieri.

---

### John M. White v. Giovanni Lifrieri.

#### Gen. No. 12,308.

1. TRUST DEEDS—*when become liens.* Trust deeds not being made to secure actual loans at the time they are severally executed, become liens upon the premises described therein at the time they are severally sold for value.

2. MASTER IN CHANCERY—*effect of finding of.* The finding of a master in chancery is not given the same weight as that accorded to the verdict of a jury; the master's finding upon the facts is *prima facie* only, is advisory, and nothing more.

3. MASTER IN CHANCERY—*when findings of, upon facts, will not be disturbed.* The findings of a master upon the facts, where such findings have been approved by the chancellor, will not be disturbed on appeal unless they are clearly and manifestly against the weight of the evidence.

Foreclosure proceeding. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1905. Affirmed. Opinion filed March 1, 1906.

TYRRELL & FELLINGHAM, for appellant.

THOMAS B. LANTRY, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant filed a bill to foreclose a trust deed securing the sum of $1,000, dated March 21, 1901, and recorded five days thereafter, upon certain premises therein described. Appellee, who was made a defendant, answered, and filed a cross-bill, in which he set up his ownership of another trust deed conveying the same premises, securing the sum of $1,500, dated July 17, 1900, and recorded the 31st day of the same month. George W. Lyon, also a defendant, adopted the answer of appellee and set up his claim under a trust deed upon the same premises, dated March 1, 1901, and recorded June 7, 1901, securing the sum of $1,500. Every one of these trust deeds ran to Herman B. Wickersham as trustee, then a member of the Chicago bar. The master by his report found that said trust deeds were successive liens in the order of their dates. At the hearing of objections to this report the chancellor affirmed the findings of the master, and entered a decree in accordance therewith, and directed a sale of the premises, the proceeds to be applied in extinguishment of the liens in the order of their priority. From this decree the present appeal was perfected.

To prevent confusion we will hereafter call the oldest in date of these instruments the Lifrieri trust deed, the second oldest the White trust deed, and the latest the Lyon trust deed. Frank Romano obtained title to the premises in question May 14, 1900, from Annie Collette. On the same date Romano and his wife conveyed other premises to Annie Collette. Romano never saw these premises and never paid anything therefor. The purchase was made by Wickersham. Annie Collette says that she did not know Romano and dealt with Wickersham only. Throughout this transaction Romano was used as a dummy by Wickersham. This fact is not important in this case as each and all of the parties holding the trust deeds claim title through Romano, and therefore cannot question his title. July 17, 1900, Wickersham for the first time told Romano, who was his client, that the title of the premises had been placed in his name, and asked him to execute the Lifrieri notes and trust deed. Romano assented and the papers were executed upon that day. Upon

the request of Wickersham Romano and his wife executed the White and the Lyon trust deeds at their respective dates. In every instance the notes and trust deeds upon their execution were taken possession of and carried away by Wickersham.

August 23, 1900, Wickersham deposited what appears to have been the Lifrieri notes and trust deed with the Royal Trust Company of Chicago as collateral to a loan that day made to him by that bank. They remained with the bank until November 26, 1900, on which day the Wickersham loan was paid and the collateral was surrendered to him. On the last named day or at some time subsequent thereto Lifrieri bought these notes and this trust deed from Wickersham, paying therefor the sum of $1,500. At the time of his purchase Lifrieri received an abstract of the property, an opinion of title signed by Wickersham stating that the notes and trust deed were a first lien upon the premises, and a policy of insurance covering the improvements thereon.

March 26, 1901, White purchased from Wickersham, for value, the notes and trust deed dated March 20, 1901. The Lyon notes and trust deed confessedly were executed and delivered after the sale of the White trust deed. These three trust deeds, upon the same premises, not being made to secure actual loans at the time they were severally executed, became liens upon the premises described therein at the time they were severally sold for value by Wickersham. Schultze v. Houfes, 96 Ill., 335; Fischer v. Touhy, 186 Ill., 143.

The disputed and dominant question of fact in this case is the date of Lifrieri's purchase.

Before the evidence was taken in this case Wickersham had recently left the city of Chicago and could not be found. The evidence tends to show that Romano did not sign the Lifrieri notes, but that they were signed by Wickersham in the name of Romano. July 17, 1900, Wickersham asked Romano to go with him to the scrivener's in order that the necessary papers to secure a loan upon these premises could be executed. He went with his wife, and Wickersham accompanied or met them at the scrivener's. The notes and

the trust deed were then drawn.    Romano saw the notes in
the possession of Wickersham and saw the latter place rev-
enue stamps thereon.    Afterward and during the same in-
terview he and his wife signed and acknowledged the deed
of trust in which these notes are recited to be the notes of
Romano.    These acts made the notes as fully the notes of
Romano as they would have been had he personally signed
his name thereto.    Bell v. Waudby, 4 Wash., 743.

Counsel for appellant contends that the inconsistencies
and contradictions in the evidence of appellee deprive his
evidence of all credit, and therefore the master should not
have found that his last testimony that he purchased his
notes and trust deed in November, 1900, is true.

On the other hand counsel for appellee insists that "In the
trial of chancery cases as to questions of fact and the credi-
bility of witnesses, the master in chancery stands in the
place of the jury, the rules of law applicable to his findings
and the weight to be given to the same is identical with that
of the verdict of the jury."    This is a mistaken view of the
law.    The master is not a judicial officer, he is a ministerial
officer.    His finding upon the facts is *prima facie* only, is
advisory and nothing more.    While due weight should be
given to his conclusions of fact when he saw and heard the
witnesses, the facts must be found by the court before a
decree can be entered, and the chancellor may modify such
conclusions or wholly reject them if he finds just ground
so to do.    Hards v. Burton, 79 Ill., 509; Fairbury Agricul-
tural Bd. v. Holly, 169 Ill., 12; Chicago B. P. Co. v. Schus-
ter, 88 Ill. App., 514.

The rule governing this case is that where the finding of
the master has been approved by the chancellor, it will not be
disturbed upon appeal, unless it is clearly and manifestly
against the weight of the evidence.    Miltimore v. Ferry, 171
Ill., 219; Siegel v. Andrews, 181 Ill., 356; Kohlsaat v. Ill.
T. & S. Bk., 102 Ill. App., 116.

It is not disputed but that when Lifrieri did purchase the
notes and trust deed dated July 17, 1900, from Wickersham
he paid the sum of $1,500 in cash therefor.    Nor can it be

denied that when Lifrieri was last upon the stand he testified that such purchase was made November 26, 1900. Nor is there any evidence to the contrary, other than that found in the testimony of appellee. The evidence of Lifrieri is contradictory. When first on the stand he placed the date of his purchase in the summer of 1900, but on cross-examination he said: "I think the trust deed was bought in 1901 instead of 1900. I guess it was in 1901." The master then said: "He (witness) evidently was mistaken in reference to the time or something."

Counsel for appellee, addressing witness: "Can you ascertain the fact when you purchased this?" A. "I guess I could." Counsel: "I want to reserve the right, your honor, to show the true state of the facts to the master."

When again interrogated Lifrieri testified positively that his purchase was in February, 1901. But when called once more he testifies that the transaction occurred in November, 1900. He explains his evidence as to February, 1901, by saying that at that date he bought from Wickersham another note called the Marine note. Evidence to show the purchase of this last note in February, 1901, was offered by Lifrieri, but upon objection of appellant the master ruled it out.

From these contradictions the master, somewhat harshly, we think, finds that in stating he purchased said papers in February, 1901, Lifrieri testified falsely. While these contradictory statements subject the witness to grave suspicion and strongly tend to minimize the weight of his testimony, the explanation that the mistake arose from confusing the Romano purchase with the Marine purchase is not unreasonable.

That this purchase was made in November, 1900, is supported by the evidence of Annie Collette, who says that Wickersham and Lifrieri in the summer of 1900 came out to and examined the premises; by the fact that the Royal Trust Company held these papers, or similar papers, as security for a loan to Wickersham from August 23, 1900, to November 26, 1900, when he paid the loan and took away the papers; and that on that date H. Claussenius & Co., bankers, cashed

a check for $500 for Lifrieri; and also that Lifrieri received with the notes and trust deed the abstract of title, the opinion of title showing this to be the first lien upon the property, and a fire insurance policy upon the premises. We think these circumstances so corroborate the evidence of Lifrieri that his purchase was made in November, 1900, that the master was justified in his findings, and the chancellor was correct in sustaining them and in embodying them in the decree herein. We therefore affirm the decree of the Superior Court.

<div align="right">

*Affirmed.*